BeaRSON, J.
 

 The exceptions of the defendants raise the question, at what time ought the valuation of the slaves and •other property, which was secured by the legatees, to be made, for the purpose of ascertaining the amount to which the plaintiff is entitled, as his share of the estate ? The commissioner adopted the principle of valuing such of the slaves, and their increase, os are still retained by the legatees,
 
 at the time of making the report,
 
 and adding the amount of hire3 that had been, or might have been, received, up to that time; and of valuing such as had been disposed of,
 
 at dhe time they were sold,
 
 and adding thereto interest, up to the time of the sale of each respectively. The exceptions insist, that the correct principle was, to fix the value of those received by the widow,
 
 at the time she received them,
 
 and of those received by the two daughters, at the time
 
 they received them.
 
 We do not think either principle correct, and are satisfied that the true principle is, to adopt the valuation at the time the estate was settled, or ought to have been settled: that is, as soon after the death of the testator, as a settlement could have been made, consistently with the rights of creditors. This was adopted as the principle upon which, to ascertain the amount to which a widow, who dissents, is entitled, as her share of the personal estate, Hunter v. Husted, Bus. Eq. 98, and it commends itself, as the principle upon which to ascertain the amount to which a child, born after the death of the testator, for whom the will makes no provision, is entitled. It is based on these reasons:
 

 1st. It produces uniformity to act upon the rule in reference to an after born child, which has been adopted in reference to a widow who dissents. So an advancement is valued, when received, without reference to a subsequent increase or falling off in value.
 

 
 *132
 
 2nd. No other rule will make the sums, to be contributed by the legatees, equal, and conform to the maxim “equality is equity.” Upon the principle adopted ly the commissioner,, each legatee is made to contribute a diffei ent amount. Why should a legatee, who was fortunate enough to keep Ms slaves, be rated ldgher, because of the fact that they have increased, and the price of slaves was high at the date of the report, than the one whose slaves were sold many years ago ? "Why should one be charged with the amount which might have been received for hire, while the other is only charged with six per cent upon-the amount for which Ms slaves sold ? This of necessity will produce inequality, as between, the legatees, in every case, to say nothing of the difficulty of fixing on the proper amount to he charged for hire, after the expiration of many years, when scarcely any two witnesses will agree as to the hire that might have been obtained in any one year: and of the hardship of charging one with negro hire for a series of years, during which, in fact, they were not hired out, aud he acted with them, and used such profits as he made, as if he was the absolute owner ? Almost any man, according to .the ordinary way of using slaves, would be ruined, if, .after some thirty years, he is called to a strict account, as if the negroes had been hired out.
 

 3rd. In this way an after born child will receive the exact amount to which he is entitled, and the amount will be fixed and certain, and. will not depend upon the accident of death of negroes, and a fall in prices, -on the one hand, or upon their increase, or a rise in prices,-on the other.
 

 In support of the principle ac ed. on by the commissioner, it was insisted, that the plaintiff is not merely entitled to one-fourth the value -of- .the slaves, hut to one-fourth of th.e slaves specifically, and therefore has an equity to follow the .fund, and require of the executor an account of his breach of trust, and of the legatees, on the footing of being a tea-
 
 *133
 
 ant in common, one-fourth of the present value of the slaves, •and their increase, together with the profits that might have been made. This posición is untenable : neither the prem-ies, nor the conclusion are correct. An after born child is not entitled to a part of the property specifically ■under the act of 1808. The object was to provide for him; but there is nothing to justify an interference with the ■dispositions of the will, except so far as it is necessary to accomplish that object. Such a child is put on a middle ground between that of a specific and a general legatee. If t ere is a surplus, out of which the amount to which he is entitled can be raised, it should be applied to that purpose. If there is no surplus, the 4th section requires the legatees to contribute. So he stands on higher ground than a general, hut lower than a specific, legatee. Even a specific legatee, however, has no right
 
 in rem,
 
 and is not considered in equity as the owner of the property; for the executor does not hold the property as a more trustee. The interest of the legatee cannot be sold, as a trust, under the act of 1812; and if the executor sells the property, the legatee cannot follow it in the hands of a purchaser, although he might, with notice. The extent of the equity of the legatee is, to have the property delivered to him specifically, provided it is not necessary to sell for the payment of creditors, but remains in the hands of the executor. The doctrine of following the fund has no application. It is a principle of equity, that, when a trustee converts the fund, and for the purpose of speculation, invests it in slaves, or merchandise, or anything else, the
 
 cestui qui trust
 
 has his election to call for the original fund, with interest on it, if the investment turns out badly, or to claim the benefit, if it has been profitable. This is a departure from the general rule, .that “ he who runs the risk should take the gain.” The exception is made for the purpose of removing all temptation to misapply the fund, by attempting to speculate upon what belongs to ano»
 
 *134
 
 ther. The doctrine, however,, is confined to cases of pure-trust, when the
 
 cestui qui trust
 
 is considered in equity as-the owner of the fund. It never' has been applied to the-case of an executor or administator.
 

 In our case, so far as the executor is concerned, the doctrine can have no application, for a further reason: he did not attempt to make gain by a conversion of the slaves and “ the head and front of his offending ” is, that he delivered them over to the legatees, and omitted to take care of tie interest of the plaintiff, as the Statute makes it his duty to do. So far as the legatees are concerned, they held no fiduciary relation towards the plaintiff, and did not receive the slaves as tenants in common with him, but in their own right; as that to which they weie entitled under tl.e will, and the Statute 'simply makes them liable to contj ibution, not to give up any of the specific property. So the extent of the plaintiff’s equity, as was declaied in the foimer decree, is to have a lien on tLe propeity, so as to secure the amount to which he is entitled.
 

 The legacies to the daughters, although not to be delivered until marriage, or arrival at age, never vested or conferred a present right; so they stand in regard to the settlement on the same footing with the widow: when she received her part, the settlement wras made as to all: a valuation of the whole estate, at that time, will fix the amount to which the plaintiff is entitled, with interest.
 

 No exception being taken to the report in regard to the land, it is in that respect confirmed. It is set aside as to thereat, and referred back to the commissioner, to state the account according to these directions.
 

 Decree accordingly.